## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

DARYL C. BELL,
an individual,

       Case No.:

      Plaintiff,

v.

NATIONAL CREDIT SYSTEMS, INC.
a foreign for-profit corporation,
ASTER BUCKHEAD APARTMENTS,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, DARYL C. BELL (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, NATIONAL CREDIT SYSTEMS, INC. (hereinafter, "NCS"), ASTER BUCKHEAD APARTMENTS (hereinafter, "Aster"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

1

## PRELIMINARY STATEMENT

1.      This is an action brought by an individual consumer for damages for NCS's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein NCS improperly attempted to credit-report and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union that was created or allegedly incurred as a result of identity theft and fraud.   More specifically, despite Plaintiff repeatedly advising NCS that he did not personally open the alleged account, did not authorize the opening of the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed NCS's reporting of such erroneous information directly to Equifax, Experian, Trans Union— NCS *continued* to report this fraudulent account with a significant balance due and past-due.

2.      Furthermore, this is an action for damages for Equifax, Experian, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report Plaintiff as the individual responsible for the alleged NCS account after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Equifax, Experian, and Trans Union including sworn statements and police reports.

3.      Additionally, this is an action for damages brought by an individual

2

consumer for NCS and Aster's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein NCS and Aster attempted to collect a consumer debt directly from Plaintiff that Plaintiff did not owe.

## JURISDICTION, VENUE & PARTIES

4.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq. Supplemental jurisdiction exists permitting Plaintiff's claims under the FCCPA pursuant to 28 United States Code, Section 1367.

5.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.      Venue is proper in this District as the acts and transactions described herein occur in this District.

7.      At all material times herein, Plaintiff is a natural person residing in Santa Rosa County, Florida.

8.      At all material times herein, NCS is a foreign profit corporation existing under the laws of the state of Georgia.

9.      At all material times herein, Aster is a foreign profit corporation existing under the laws of the state of Georgia.

10.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of

3

business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

11.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

12.    At all material times herein, TransUnion is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

<u>**FCRA STATUTORY STRUCTURE**</u>

13.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

14.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

15.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency

receives notice of the consumer's dispute.  *Id.* at § i(a).

16.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

17.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

18.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

19.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to

that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

20.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FCCPA AND FDCPA STATUTORY STRUCTURE

21.     The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C. §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

22.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

23.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of

information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

24.    For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt.  See 15 U.S.C. §§ 1692(d)-(e).

25.    Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt that is known to be illegitimate.  See Fla. Stat. §§ 559.72 (9).

## GENERAL ALLEGATIONS

26.    At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) and the FDCPA, Section 1692a(3) because he is an individual and allegedly obligated to pay a debt.

27.    At all material times herein, NCS, itself and through its subsidiaries, regularly extends credit—and credit reports debts associated with the same—allegedly owed by consumers residing in Santa Rosa County, Florida.

28.    At all material times herein, NCS reports information concerning an alleged collections account that was opened as a result of identity theft and fraud, referenced by account number beginning 534235X (hereinafter, the "Alleged Debt" or the "Account").

29.    At all material times herein, Aster and NCS attempt to collect an alleged consumer debt, including but not limited to, a balance allegedly owed for an apartment lease (hereinafter, the "Alleged Debt").

30.     At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in his name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

31.     At all material times herein, NCS uses interstate mail and telephones and the principal purpose of its business is to collect debt.

32.     At all material times herein, NCS is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

33.     At all material times herein, Aster and NCS are each a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

34.     At all material times herein, Aster and NCS's conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2) and the FDCPA, Section 1692a(2).

35.     At all material times herein, NCS furnishes information to Equifax, Experian, and Trans Union regarding the Account and the corresponding Alleged Debt referenced by account number beginning in 534235X (hereinafter, the "Account").

36.     At all material times herein, NCS furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the

consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

37.　At all material times herein, Experian, Equifax, and Trans Union are a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Experian, Equifax, and Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

38.　At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

39.　All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## **FACTUAL ALLEGATIONS**

40.　Prior to 2024, an apartment lease with Aster allegedly opened in Plaintiff's name (the "Account").

41.　To the extent the Account was opened by an individual or entity, such individual or entity opened the Account without Plaintiff's consent, knowledge, or approval.

42.　Plaintiff did not receive billing statements at his address from Aster regarding the Account.

43.　To the extent that charges were made on the Account after its inception

resulting in an alleged balance due (i.e., the Alleged Debt), Plaintiff did not make any such charges himself, Plaintiff did not authorize any other individual or entity to make charges for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of charges made on the Account.

44.     On or about January 4, 2024, the Account was placed for collections with NCS.

45.     Soon thereafter, Plaintiff received an alert that he had new potentially negative information on his credit report.

46.     At this time, Plaintiff discovered the NCS account listed on his Experian, Equifax, and Trans Unioncredit reports with an original creditor of Aster.

47.     As such, on March 15, 2024, Plaintiff executed a police report with Santa Rosa Sheriff's Office ("Police Report").  A true and correct copy of the Police Report is attached as **Exhibit A**.

48.     Soon thereafter, in March 2024, Plaintiff submitted a dispute to Experian, Equifax, and Trans Union and advised them that this Account was not his and was the result of identity fraud ("First Dispute").

49.     Plaintiff included the Police Report within his First Dispute to Experian, Equifax, and Trans Union.

50.     Experian, Equifax, and Trans Union received Plaintiff's First Dispute and conveyed the same to NCS.

51.     In response to Plaintiff's First Dispute, NCS, Experian, Equifax, and Trans Union each verified the Account and claimed that Plaintiff still owed and was

past-due on the Account.

52.     Plaintiff submitted a Second Dispute and in response, Experian, Equifax, and Trans Union deleted the Account from his credit reports and files.

## **ASTER AND NCS'S DEBT COLLECTION COMMUNICATIONS**

53.     On or about January 2024, Plaintiff contacted Aster via telephone and Aster verified that he owed money on the Account.

54.     Soon thereafter, Plaintiff contacted NCS via telephone, and NCS verified that he owed money on the Account.

## **DAMAGES**

55.     As a result of Defendants' reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by NCS if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

56.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account with a balance past-due, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

57.     Overall, Plaintiff suffered damage to his reputation as a result of Defendants' conduct.

58.     Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he did not initiate or authorize the opening of the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account and NCS's ongoing attempts to collect the Alleged Debt.

59.     Plaintiff was denied the use of American Express Credit Card as a result of Defendants' inaccurate reporting of the Account.

60.     Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)**
**(As to ASTER and NCS Only)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

61.     ASTER and NCS are each subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by

communicating with Plaintiff in an attempt to collect the Alleged Debt despite ASTER and NCS possessing knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that ASTER and NCS knows does not exist.

62.     Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff did not personally apply for the Account or open the Account; (ii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account that was alleged opened until he received an alert on his credit reporting; (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; Report; and (v) Plaintiff filed a Police Report.

63.     As such, ASTER and NCS possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt, yet ASTER and NCS continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

64.     As such, ASTER and NCS attempted to collect the Alleged Debt—an amount known to be illegitimate—and asserted a legal right that does not exist in its collection letter made in an attempt to collect the Alleged Debt from Plaintiff.

65.     Despite Plaintiff's exhaustive efforts advising that the Alleged Debt was the result of identity theft and fraud, ASTER and NCS continued to communicate with Plaintiff in an attempt to collect the Alleged Debt.

66.     ASTER and NCS's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite

not opening the Account personally nor authorizing another individual to open the Account in his name or make charges to the same, ASTER and NCS could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

67.    As a result of ASTER and NCS's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing the Alleged Debt personally, Plaintiff must simply endure ASTER and NCS's ongoing and invasive debt collection communications.

68.    ASTER and NCS's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

69.    As a direct and proximate result of ASTER and NCS's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and e(10)**
**(As to NCS Only)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

70.    NCS is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the

14

amount, legal status, or character of the alleged Debt.

71.     Specifically, NCS possessed actual knowledge that the account was opened as the result of identity theft and fraud, that Plaintiff did not open the ASTER account or authorize any other individual to open the ASTER account in his name and likewise did not receive the benefits if any goods or services forming the basis of the Alleged Debt and Plaintiff repeatedly advised Defendants that he did not owe the Alleged Debt for such reasons.

72.     Despite knowing that Plaintiff did not owe the Alleged Debt, NCS attempted to collect the alleged debt from Plaintiff during their telephone call in or around March 2024.

73.     NCS's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to NCS on the Alleged Debt or continue to endure NCS's unlawful collection attempts, the repetitive transfer of the Alleged Debt to a new debt collector, and potential derogatory credit reporting of the Alleged Debt as owed by Plaintiff personally.

74.     As a direct and proximate result of NCS's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(As to NCS Only)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

75.     NCS is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian, Equifax, and Trans Union delete the Account from Plaintiff's credit reports and credit files after re-investigating Plaintiff's disputes.

76.     As described above,  Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff did not personally apply for the Account or open the Account; (ii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account that was alleged opened until he received an alert on his credit reporting; (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; and (v) Plaintiff filed a Police Report.

77.     Despite Plaintiff not being responsible for the Alleged Debt, and despite NCS receiving notice of Plaintiff's disputes from Plaintiff, Experian, Equifax, and Trans Union—including the information and documents referenced in the above paragraph— NCS willfully and/or negligently failed to request that Experian, Equifax, and Trans Union delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and Trans Union including significant balances due, as significantly past-due, and derogatory and/or negative payment history.

16

78.     The documents Plaintiff enclosed in support of his disputes included the Police Report.

79.     In response to Plaintiff's disputes, despite NCS receiving notice of Plaintiff's disputes from Experian, Equifax, and Trans Union—including the information and documents referenced in the above paragraph— NCS failed to request that Experian, Equifax, and Trans Union delete the Account from Plaintiff's credit reports and credit files.

80.     Instead, NCS purportedly verified and/or updated its reporting of the Account including significant balances due, as significantly past-due, and with derogatory and/or negative payment history.

81.     NCS's refusal to request that Experian, Equifax, and Trans Union update its reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as NCS clearly possessed knowledge that the Alleged Debt was a result of identity theft and fraud.

82.     NCS's re-investigations were not conducted in good faith.

83.     NCS's re-investigations were not conducted reasonably.

84.     NCS's re-investigations were not conducted using all information and documents reasonably available to NCS.

85.     As a result of NCS's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of NCS's derogatory and continued reporting of the Account, did not wish to

further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

86.     NCS's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

87.     NCS's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT FOUR:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
### (As to Experian, Equifax, and Trans Union)

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

88.     Experian, Equifax, and Trans Union are subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

89.     Experian, Equifax, and Trans Union willfully and/or negligently failed

to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the NCS Account.

90.     Specifically, despite Plaintiff advising Experian, Equifax, and Trans Union that Plaintiff did not open the Account, did not authorize any other person to open the Account in his name or on his behalf, did not make any charges on the Account, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made on the Account—and therefore, the Account was opened as a result of identity theft and fraud—Experian, Equifax, and Trans Union each continued to report the Account with a balance due, with a balance past-due, and with derogatory and/or negative payment history resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

91.     Further, Experian, Equifax, and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Experian, Equifax, and Trans Union credit reports and credit files.

92.     Despite Plaintiff notifying Experian, Equifax, and Trans Union of their reporting errors and providing documents in support of his disputes, Experian, Equifax, and Trans Union continued to report the Account with a balance due, balance past-due, and with derogatory and/or negative payment history, and subsequently published Plaintiff's credit reports to Plaintiff current creditors and/or

potential future creditors including the inaccurately reported Account.

93.     As a result of Experian, Equifax, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

94.     Experian, Equifax, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

95.     Experian, Equifax, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq*.**
**(As to Experian, Equifax, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

96.     Experian, Equifax, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

97.     Specifically, Experian, Equifax, and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

98.     Overall, Plaintiff's disputes provided Experian, Equifax, and Trans Union with sufficient information and supporting documentation allowing Experian, Equifax, and Trans Union to identify that the alleged balance owed on the Account was created as a result of identity theft and fraud, and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

99.     Given that Plaintiff did not personally open the Account, did not authorize anyone to open the Account in his name, and did not benefit from the Account in any way, and given that Experian, Equifax, and Trans Union did not request any documents from NCS supporting NCS's reporting of the Account, Experian, Equifax, and Trans Union could not reasonably verify that Plaintiff is

personally responsible for the balance allegedly owed on the Account.

100.    Experian, Equifax, and Trans Union continued to inaccurately report the Account with derogatory, late payment information and with a significant balance past-due following Plaintiff's disputes, causing the Account to be reported as a derogatory, negative, or adverse account.

101.    As such, Experian, Equifax, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

102.    Such reporting is false and evidences Experian, Equifax, and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's disputes.

103.    Experian, Equifax, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

104.    Experian, Equifax, and Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by NCS.

105.    Experian, Equifax, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

106.    Experian, Equifax, and Trans Union's reinvestigation procedures are unreasonable.

107.    Experian, Equifax, and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian, Equifax, and Trans Union.

108.   Experian, Equifax, and Trans Union's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was done in bad faith.

109.   Experian, Equifax, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Experian, Equifax, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

110.   As a result of Experian, Equifax, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, were deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

111.   Experian, Equifax, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

112.   Experian, Equifax, and Trans Union's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States

Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

   a.   Judgment declaring that ASTER and NCS violated the FCCPA;

   b.   Judgment enjoining ASTER and NCS from engaging in further conduct in violation of the FCCPA;

   c.   Judgment against ASTER and NCS for maximum statutory damages under the FCCPA;

   d.   Judgment against NCS for maximum statutory damages for violations of the FDCPA;

   e.   Judgment against NCS, Experian, Equifax, and Trans Union for maximum statutory damages for violations of the FCRA;

   f.   Actual damages in an amount to be determined at trial;

   g.   Compensatory damages in an amount to be determined at trial;

   h.   Punitive damages in an amount to be determined at trial;

   i.   An award of attorney's fees and costs; and

   j.   Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*
Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*